FILED

2016 Sep-22  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CASEY OLIVER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 2:15-cv-00689-LSC |
| LHOIST NORTH AMERICA | ) | |
| OF ALABAMA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM OF OPINION

Before the Court is Defendant Lhoist North America of Alabama, LLC's ("Lhoist") Motion for Summary Judgment. Plaintiff Casey Oliver ("Oliver") brought this case alleging both discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), and under 42 U.S.C. § 1981. For the reasons stated below, Lhoist's motion is due to be granted.

I.  BACKGROUND

Oliver is an African-American male who was employed at Lhoist, a mineral and lime producer, from July 8, 2002 until his termination on June 20, 2014. (Oliver Dep. 51, 356.) During the relevant time period, Oliver worked mainly as a front-end loader operator under Quarry Manager Myron Squires ("Squires"). Other relevant members of management included

Supervisor Steve Dismukes ("Dismukes"), Alabama Director of Operations Laura McAnany ("McAnany"), and Regional East Human Resources Director Stacey Barry ("Barry").

On May 13, 2013, Oliver filed a complaint with the Mine Safety and Health Administration ("MSHA"), claiming that Lhoist discriminated against him because he was a union representative. Then, in late August 2013, Squires received a report from an employee that Oliver made a racial statement. (Oliver Dep. 1.) After an investigation, two other employees came forward with corroborating reports. Squires, along with Human Resources Manager Clint Kelley ("Kelley"), determined that the comment violated Lhoist's policies on harassment and abusive language. As a result, Oliver was suspended for five days and placed under a Last Chance Agreement ("LCA") on September 3, 2013.

Three days later, on September 6, 2013, Oliver filed an EEOC charge against Lhoist, alleging that the LCA amounted to race discrimination and retaliation for the MSHA complaint. Both Squires and McAnany received notice of the EEOC charge from Oliver on September 9, 2013.

In February 2014, Oliver received a verbal warning for two separate safety offenses, which occurred in December 2013 and in February 2014. On December 11, 2013, Oliver used a "water tree" to rinse off his loader,

causing damage to that loader's air intake valve.  On February 11, 2014, Oliver backed a truck into a loader, damaging the loader's left headlight.

Oliver's next notable contact with Lhoist management occurred on February 18, 2014, when the United Steel Workers International Union ("The Union") filed a grievance on Oliver's behalf alleging that Oliver should receive Heavy Equipment Operator ("HEO") pay for operating a 980 loader. The Union claimed that Oliver deserved to be upgraded because two white employees, Barry Wesley Powell ("Powell") and Eric Pickett ("Pickett"), were being paid HEO pay for operating the 980 loader. Lhoist conceded that Powell and Pickett were mistakenly upgraded to HEO pay in February 2014, and settled the Union grievance in April 2014 by giving Oliver eight hours of HEO pay.

Oliver filed a supplemental EEOC charge on March 10, 2014 about the HEO pay issue, alleging racial discrimination and retaliation. Barry was made aware of this charge on March 20, 2014. The EEOC declined to pursue Oliver's September 6, 2013 and March 10, 2014 charges and issued Oliver a Notice of Right to Sue on April 25, 2014.

About two months later, on May 5, 2014, Oliver was allegedly caught sleeping at work. Squires and Dismukes state that they saw Oliver sitting in his loader with the engine off, and that he was unresponsive when they

called his name. Lhoist claims that after Squires climbed onto the loader and called Oliver's name a second time, Oliver woke up and turned on the loader.  However, according to Oliver, he was sitting in his loader with dark safety glasses on with his engine turned off because his loader had overheated. Oliver then saw Squires approach, at which time Squires asked him if he was asleep. Oliver responded "no" and turned the engine on to demonstrate that the engine was overheated.

After a meeting with Union President Floyd Avery ("Avery"), Union Steward William Ledlow ("Ledlow"), Squires, Dismukes, and Shop Steward Thomas Brown ("Brown"), Barry determined that Oliver violated company policy by falling asleep on the job. As a result, on May 12, 2014, Oliver signed a Last and Final Chance Agreement ("LFCA") as an alternative to resignation or termination. The LFCA stated, in pertinent part: "I agree that I will follow and comply with any and all Lhoist North America O'Neal Plant/Quarry policy, rules, and regulations, including the attendance policy. I understand that if I violate any policies, rules, or regulations during the next twelve (12) months my employment will be terminated immediately and I will not receive any further warnings." (Doc. 22, DX 35.)

Finally, on June 20, 2014, Oliver was terminated for violating the LFCA. Oliver was thirty-nine minutes late to work on June 18 although he

called in and reported that he had a flat tire. Lhoist interpreted this as a violation of the attendance policy and therefore a violation of the LFCA. Oliver then filed an EEOC charge against Lhoist on June 25, 2014, alleging discrimination and retaliation with regard to the LFCA and his termination. The EEOC issued a Notice of Right to Sue on February 2, 2015. After Oliver was terminated, an African-American named Alvin Cameron was awarded Oliver's former position.

A month after Oliver's termination, Barry placed David Racer, a white employee, on a LFCA. (Doc. 22, PX 10.) This agreement also required Racer to comply with the attendance policy. However, Racer was allowed to accumulate three occurrences under the attendance policy before he was finally terminated for violating his LFCA. (*Id.*)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,  248 (1986). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The

trial judge should not weigh the evidence but must simply determine where there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citations omitted). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## III.   DISCUSSION

Oliver's claims center around the following employment actions: (1) placing Oliver on a LCA, (2) disciplining Oliver by issuing a verbal warning against him, (3) failing to pay Oliver heavy operator pay, (4) placing Oliver on a LFCA, and (5) terminating Oliver. Oliver alleges that these five actions

were taken for discriminatory and retaliatory reasons, in violation of Title VII and § 1981.

    A. Title VII

       i. Administrative Exhaustion

Valid claims under Title VII must meet all requirements for administrative exhaustion. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970). Administrative exhaustion under Title VII requires filing a timely charge with the EEOC. *Id.* If, as in this case, the EEOC declines to bring its own civil action against the employer, it will issue a Notice of Right to Sue to the employee. 29 C.F.R. § 1601.28(b)(1). Upon receipt of this notice, the employee has a period of ninety days to bring suit against the employer. 42 U.S.C. § 2000e-5(f)(1).

Here, Oliver filed an EEOC Charge based on the LCA on September 9, 2013. (Doc. 22, DX 7.) Then, on March 10, 2014, Oliver filed a supplement to the charge. (Doc. 22, DX 8.) This supplement described Oliver's claim that he was discriminated and retaliated against in Lhoist's failure to pay him HEO pay. (*Id.*) A right to sue letter for these charges was mailed to Oliver on April 25, 2014. (*Id.*) However, Oliver did not file this suit until April 24, 2015—almost one year after the EEOC issued its notice. (Doc. 1.) Once the defendant contests the timeliness of a Title VII suit, the

plaintiff has the burden of establishing that it was filed within the ninety-day limitation period. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1234 (11th Cir. 2002). Lhoist raised the issue, but Oliver did not respond to this argument in his brief. Thus, Oliver has not met his burden. As a result, summary judgment on his Title VII claims as to the LCA and HEO pay issues is due to be granted.

Further, Oliver's Title VII claims regarding the verbal warnings are also due to be dismissed for lack of administrative exhaustion.  Oliver filed three EEOC charges based on his employment at Lhoist. (Doc. 22, DX 7, DX 8, DX 37.) None of these charges mentioned the verbal warnings. (*Id.*) An EEOC charge must contain a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). Further, "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1979).

Here, Oliver's first EEOC charge, filed on September 9, 2013, alleged that he was placed on a LCA because of his race. (Doc. 22, DX 7.) Oliver's supplemental EEOC charge, filed March 10, 2014, alleged that he was not paid HEO pay based upon discrimination and retaliation. (Doc. 22, DX 8.)

Both of these charges were filed before Oliver was given a verbal warning on February 11, 2014. Oliver's last charge was filed on June 25, 2014 and alleged that Lhoist "has retaliated against me by improperly disciplining me and other discriminatory acts." (Doc. 22, DX 37.) However, the only specific acts of discipline Oliver mentions in that charge are being placed on a LFCA and being terminated. (*Id.*)

Lhoist maintains that Oliver's verbal warnings claim should be dismissed because he did not exhaust his administrative remedies for this claim in that he did not mention them in any of his EEOC charges. Oliver did not respond to this argument. Therefore, Oliver has failed to meet his burden of proving that he met all "conditions precedent" to the filing of his suit. *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982). As such, summary judgment against Oliver on his Title VII discrimination and retaliation claims arising out of the verbal warnings is due to be granted for failure to exhaust administrative remedies.

## ii. Discrimination

Title VII prohibits employers from discriminating on the basis of an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Discrimination claims brought under Title VII . . . are

typically categorized as either mixed-motive or single motive claims."[1] *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (footnote omitted). A plaintiff can prove his discrimination claim by either direct or circumstantial evidence. Here, Oliver relies on circumstantial evidence.[2]

In single motive cases where a plaintiff relies on circumstantial evidence, the Eleventh Circuit applies the burden-shifting scheme first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998). Under *McDonnell Douglas*, a plaintiff carries the initial burden of producing circumstantial evidence sufficient to prove a prima facie case of discrimination. *See id.* A plaintiff can demonstrate a prima facie case of discrimination "by showing that [he] was a qualified member of a protected class[3] and was subjected to an adverse employment action in contrast with

---

[1] Oliver alleges that this is a mixed-motive claim in his Opposition to Defendant's Motion for Summary Judgment (Doc. 26). However, Oliver's complaint claimed that bias against Oliver was the only reason for the employer's actions. Therefore, because the claims were pleaded as single-motive claims, they will be analyzed under single-motive standards. *See Keaton v. Cobb Cnty., Ga.*, No.08-11220, 2009 WL 212097, at *9 (11th Cir. 2009) (stating that mixed-motive claims need to be asserted in the complaint (citing *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314-15 (11th Cir. 2004)).

[2] Although he does not directly state that he is relying on circumstantial evidence, Oliver has not provided any evidence directly showing discrimination based on race.

[3] As an African-American, Oliver is a member of a protected class. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011). Therefore, this element will not be discussed further.

similarly situated employees outside the protected class." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). Additionally, the Eleventh Circuit has held that a plaintiff may alternatively establish a prima facie case by showing that he was a member of the protected class and that he did not violate the rule he was accused of violating. *See Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

If the plaintiff meets the burden of establishing a prima facie case, then the burden shifts to the defendant to produce evidence of a "legitimate, nondiscriminatory reason[]" for its actions. *Id.* If the defendant produces evidence of a legitimate reason, "the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Id.* The plaintiff's burden to establish pretext applies to all of the defendant's proffered reasons. *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). Thus, when a defendant proffers more than one reason, a plaintiff fails to meet this prong if he only establishes pretext as to one of those reasons. *Id.*

### 1. LFCA

Oliver alleges that he was placed on a LFCA because of his race and in retaliation for the EEOC charges that he filed. Lhoist, however, claims that he was placed on this agreement because he was caught sleeping at

work. Because this is a disciplinary claim, Oliver can make out a prima facie case of discrimination by showing that he was a member of the protected class and that he did not violate the rule he was accused of violating. *Jones*, 874 F.2d at 1540. Here, Oliver testifies that he was not sleeping, but was instead waiting for his equipment to cool down. (Oliver Dep. 262, 269.) Oliver's evidence that he was not sleeping is enough to establish a prima facie case of discrimination.

The burden then shifts to Lhoist to produce evidence of a "legitimate, nondiscriminatory reason" for its actions. In a case alleging that discipline was discriminatory, the defendant can show a legitimate, nondiscriminatory reason for its actions by showing that it had a good faith, honest belief that the plaintiff violated work rules. *Stone & Webster Constr., Inc. v. U.S. Dep't of Labor*, 684 F.3d 1127, 1136 (11th Cir. 2012). Here, management had received reports of Oliver's misconduct from two supervisors (Squires and Dismukes), who signed written statements stating that Oliver was found asleep during his shift. (Doc. 22, Ex. G ¶ 7.) Lhoist therefore provides enough evidence to show that it had a good faith, honest belief that Oliver violated the rule against sleeping on the job.

The burden thus shifts back to the Oliver, who can avoid summary judgment by showing that Lhoist's reason for firing him (sleeping on the

job) is pretextual. Oliver argues that this reason is pretextual because Squires and Dismukes lied about finding him asleep. However, even if Squires and Dismukes lied about Oliver sleeping, they did not make the ultimate decision to put him on a LFCA or to suspend him for five days. Barry and other members of senior management made that decision.

Oliver attempts to use the "cat's paw theory" to impute Squires and Dismukes's discriminatory animus onto the decision makers. The cat's paw theory imposes liability on an employer when a decision maker who takes an adverse employment action does not have discriminatory animus but is, instead, influenced by another's discriminatory animus. *Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011). In *Staub*, the Supreme Court explained cat's paw liability by stating that "if a supervisor performs an act motivated by [] animus that is intended by the supervisor to cause an adverse employment action, and that act is a proximate cause of the ultimate employment action, then the employer is liable." *Id.* at 422.

Therefore, in order for Lhoist to be liable for discrimination with regard to the LFCA, Oliver would have to present evidence that (1) Squires and Dismukes were motivated by racial animus, (2) Squires and Dismukes intended that their report would result in Oliver being placed on a LFCA,

and (3) Squires and Dismukes's report was the proximate cause of the ultimate employment action.

Here, Oliver presents evidence that Squires and Dismukes did not photograph him sleeping. He also presents evidence that in other instances where individuals were caught sleeping, they were automatically terminated. Therefore, he claims, he must not truly have been caught sleeping because he was not terminated. However, neither a lack of photographs nor a different method of discipline is proof of racial animus. Oliver does not show that white employees were disciplined less severely if they were caught sleeping. Thus, as Oliver does not present evidence of racial animus, he fails to show that Lhoist's reason for placing Oliver on the LFCA was pretextual. Therefore, summary judgment as to this claim is due to be granted.

### 2. Termination

As explained above, Oliver can establish a prima facie case of discrimination "by showing that [he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class." *Wilson*, 376 F.3d at 1087. Oliver shows that he is an African-American, and he was fired from his job for violating his LFCA by being tardy to work one time. Further,

he has provided evidence that Racer, a similarly situated white employee also on a LFCA, was not terminated after his first attendance infraction. Rather, Racer was only terminated after multiple infractions.

However, while Oliver does show that Racer was not terminated after one occurrence, he fails to demonstrate that he and Racer were similarly situated. Though they were placed on similar last chance agreements, their conduct and course of discipline at Lhoist is far from similar. Oliver was placed on the LFCA because of repeated incidents, including racial language, damage to equipment, and sleeping at work. Racer, however, was placed on the agreement because he was arrested and pled guilty to a criminal matter, which he did not properly report to his supervisors.

In order for a comparator to be similarly situated, the plaintiff has to show that "he engaged in misconduct similar to that of a person outside the protected class." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1276 (11th Cir. 2008). Because Racer's misconduct while he was employed at Lhoist was entirely different from Oliver's, he is not similarly situated to Oliver. Therefore, Oliver does not establish a prima facie case of discrimination based on comparator evidence.

However, in cases that allege that a disciplinary action was discriminatory, a plaintiff can also establish a prima facie case by showing

that he is a member of a protected class and that he did not violate the rule that he was accused of violating. Here, Oliver also attempts to establish a prima facie case of discrimination by showing that he did not violate the LFCA. It is undisputed that this agreement states, "I agree that I will follow and comply with any and all Lhoist North America O'Neal Plant/Quarry policy, rules, and regulations, including the attendance policy. I understand that if I violate any policies, rules or regulations . . . my employment will be terminated immediately" (Doc. 22, DX 35.) However, the parties disagree as to what constitutes a violation of the agreement.

Generally, Lhoist's attendance policy allows employees to accumulate occurrences before they are disciplined.[4] The LFCA did not specify how many occurrences would constitute a violation of the attendance policy. Lhoist's employees Barry and Squires both testified that Oliver was told that any occurrence or partial occurrence would be a violation of the LFCA. (Squires Dep. 156-57.) However, Union Representative Avery disputes this, saying that the attendance policy was never discussed when Oliver signed the agreement. (Doc. 26 Ex. 2.)

Oliver further points to Racer, who was also terminated for having absences while on a LFCA. Like Oliver, Racer signed the agreement which

---

[4] For instance, absence for an entire day is one occurrence. Absence for part of a day, including being late to work, is one-half occurrence.

stated "I agree that I will follow and comply with any and all . . . policies, rules and regulations, including the attendance policy." (Doc. 22, PX 10.) Racer was subject to the same attendance policy that applied to Oliver. Racer, however, accumulated three occurrences before he was terminated. (*Id.*) Oliver contends that Racer's termination was consistent with the general attendance policy. Therefore, Oliver claims, he did not violate the LFCA by being late once.

Assuming, *arguendo*, that Oliver has established a prima facie case of discrimination by showing that he did not violate the LFCA, the burden shifts to Lhoist to produce evidence of a legitimate, nondiscriminatory reason for its actions. In disciplinary cases, a legitimate, nondiscriminatory reason can be established through evidence of a good faith, honest belief that the plaintiff violated the work rule. Here, Lhoist has provided evidence to show that it had a good faith belief that Oliver had violated the LFCA. Lhoist claims that management represented to Oliver, when he signed the agreement, that any attendance occurrence would be a violation. (Squires Dep. 156-57.) Further, Lhoist states that Racer was allowed to accumulate occurrences because his immediate supervisors did not know about his LFCA and its strict attendance requirement. When upper management learned of his attendance violations, Lhoist claims, they immediately fired

Racer. Thus, according to Lhoist, one attendance occurrence would have been enough to lead to Racer's termination as well but for his supervisors not immediately reporting those occurrences.

The burden shifts once again to Oliver, who must show that Lhoist's reasons are pretextual. Oliver's only response to Lhoist's interpretation of the attendance policy is to point to inconsistencies in Barry's deposition testimony. Oliver claims that Barry initially stated that the reason Racer was not terminated after one occurrence was "system problems." (Barry Dep. 147-48.) However, in later discovery, it became clear that the "system problems" that Lhoist was experiencing did not occur until after Racer was terminated. (Doc. 26, Ex.9.)

While Barry did indeed point to system problems as a possible reason for Racer's delayed termination, Oliver mischaracterizes his testimony. When asked why Racer was not fired the first time he was absent, Barry said "I don't know, again. I know they [were] having some issues of their keeping track of their attendance." (Barry Dep. 145.) He stated multiple times that "I'm not sure." (Barry Dep. 145-48.) Thus, Barry's testimony shows that he did not know why Racer was not immediately fired. It does not, as Oliver alleges, show that Lhoist was lying.

Oliver also points to another place in Barry's deposition as evidence of pretext. Barry was asked "So Floyd asked you that specific question, you're telling me if he misses work, or if he's tardy, that's a violation of the policy?" (Barry Dep. 40.) Barry responded by saying "No, it's a violation of the Last Chance Agreement." (*Id.*) Oliver alleges, based on this testimony, that Barry didn't believe that being late was a violation of the attendance policy. However, it is clear from the testimony that Oliver is taking Barry's statements out of context. Barry was being asked about a discussion that took place when Oliver signed his agreement. He was not asked about his or Lhoist's interpretation of the attendance policy. Therefore, Barry's statements do not demonstrate pretext.

Because Oliver has failed to show that Lhoist's reasons for firing him were pretextual, he does not meet his burden. Thus, summary judgment is due to be granted as to this claim.

### iii.   Retaliation

Retaliation claims under Title VII also use the *McDonnell Douglas* burden-shifting analysis. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). However, "[a] *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action;

and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

The causal connection must be "but-for causation." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). This burden can typically "be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). However, "mere temporal proximity, without more, must be 'very close.'" *Id.* (quoting *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir. 2000)). For instance, a three to four month period is generally not enough by itself. *Id.*

### 1. LFCA

In this case, Oliver filed an EEOC charge alleging race discrimination and retaliation on March 10, 2014. (Doc. 22, DX 8.) Filing an EEOC charge is a protected activity under Title VII. *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  Oliver can show that he suffered an adverse employment action if there was a "*serious and material* change in the terms, conditions, or privileges of employment[]" when he was placed on the LFCA. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir.

2001). The LFCA stated that if Oliver broke any rule or policy, he would be fired immediately. Thus, the agreement constituted a serious and material change in his terms of employment.

To demonstrate a prima facie case of retaliation, Oliver must also show that the adverse employment action was caused by the protected activity. Here, Oliver filed an EEOC charge on March 10, 2014. (Doc. 22, DX 8). Less than two months later, on May 5, 2014, Squires and Dismukes reported Oliver for sleeping on the job, and Barry placed Oliver on the LFCA. Assuming, *arguendo*, that almost two months is close enough in temporal proximity to establish a prima facie case of retaliation, the burden shifts to the defendant to put forward evidence of a legitimate reason for placing Oliver on a LFCA. *Brown*, 597 F.3d at 1181.  As explained above in the discussion of Oliver's discrimination claim, he has failed to demonstrate that Lhoist's legitimate reason for placing him on a LFCA was pretextual. As a result, summary judgment as to the claim for retaliation based on the LFCA is due to be granted.

### 2. Termination

Oliver has also shown that he was subject to an adverse employment action when he was terminated. However, he fails to demonstrate the causation element of the prima facie case with regard to his termination.

Oliver was terminated on June 20, 2014, more than three months after he filed his second EEOC charge on March 10, 2014. Therefore, the temporal proximity here is not close enough to make out a prima facie case. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (three month period is not close enough to establish causal connection). Oliver also presented evidence that Racer was not immediately dismissed for being absent while he was on an LFCA. However, as it is undisputed that as soon as upper management found out about Racer's absences, he was immediately fired, Racer's delayed termination does not make out a prima facie claim for retaliation. Summary judgment as to this claim is due to be granted.

   B. Section 1981

    i. Discrimination

  Analysis of discrimination under § 1981 also involves an application of the *McDonnell Douglas* framework. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989).  Therefore, analysis of Oliver's Title VII and § 1981 claims will generally be the same. However, § 1981 claims can only be brought in cases that allege race discrimination. *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999). Further, § 1981 does not have the Title VII requirement of administrative exhaustion. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454-55 (2008). As such, Oliver was not required

to file an EEOC charge before bringing a suit under his § 1981 race claims. *See* 28 U.S.C. § 1658 (2002).

### 1. LCA

Lhoist placed Oliver on the LCA for allegedly making a racial comment. However, Oliver testifies that he did not make any such comment. (Oliver Dep. 166.) Therefore, considering the facts in the light most favorable to the nonmoving party, Oliver has made out a prima facie case of discrimination with regard to his § 1981 LCA race claim.

As noted earlier, in discipline cases, employers can rebut a prima facie case of discrimination by showing that they had a good faith, honest belief that the employee violated the work rule. *Stone,* 684 F.3d at 1136. Here, Lhoist alleges that management received reports from three witnesses that Oliver had made a racial statement. (Doc. 22 Ex. H ¶ 3, Doc. 22 Ex. L ¶ 5, Doc. 22 Ex. M ¶ 4.) Based on these reports, management then made a decision to discipline Oliver by placing him on the LCA. (Doc. 22 Ex. J ¶ 3.) Oliver does not contest that management received these reports. Therefore, Lhoist met its burden of showing a good faith, honest belief that Oliver violated the work rule.

The burden thus shifts to Oliver, who can overcome summary judgment if he shows that Lhoist's reasons are pretextual. *Jones*, 874 F.2d

at 1540. However, Oliver fails to put forth any evidence of pretext with regard to the reasons given by Lhoist for its action in putting him on a LCA. He does not address management's belief that he violated the work rule at all, instead he simply disputes that he made the statement. (Doc. 26 at 8.) As Oliver does not dispute that management had a good faith belief that he made a racial statement, he does not show that Lhoist's reasons for placing him on a LCA are pretextual. Summary judgment is due to be granted as to this claim.

### 2.  Verbal Warnings

Oliver also claims Lhoist was discriminatory by issuing a verbal warning against him for damaging its equipment. (Oliver Dep. 221-32.) To show a prima facie case for this claim, Oliver must offer evidence that either he didn't violate the rule or that he was treated differently than other similarly situated employees outside his protected class. *Jones*, 874 F.2d at 1540. Oliver has done neither.  Lhoist shows that five other employees were disciplined for damaging company property in 2013 and 2014. (Doc. 21 at 10.) All of these employees received at least a verbal warning. (*Id.*) Oliver does not provide any evidence on punishment for comparable misconduct at Lhoist and thus fails to make out a prima facie claim by

showing that he was more severely punished than others for comparable offenses.

In addition, Oliver does not dispute that he was not following Lhoist's directions when he caused damage to the equipment. (Oliver Dep. 223-24.) ("I just couldn't do it that day, so I was going to get me a little shortcut") Lhoist's Chemical Lime Company General Conduct and Safety Rules make it clear that "acts of willful or careless damage or abuse to company equipment or property will not be tolerated" and that "violation of company safety rules will not be tolerated." (Doc. 22, DX 13.)  Therefore, Oliver does not make out a prima facie case of discrimination by showing that he did not violate a work rule.

Because Oliver fails to make out a prima facie case for discrimination as to his § 1981 verbal warnings claim, summary judgment as to this claim is due to be granted.

### 3. HEO Pay

Oliver claims that Lhoist discriminated against him by failing to pay him as a Heavy Equipment Operator (HEO) based upon the events that occurred on February 18, 2014. According to Oliver, Lhoist was discriminatory because two white employees, Powell and Pickens, were

upgraded to HEO pay for operating the 980 loader and he was not. (Doc. 26 at 9.)

In order to establish a prima facie case of pay discrimination under Title VII or § 1981, Oliver must show that: (1) he is a member of a protected class; (2) he received low wages; (3) a similarly situated person outside the protected class received higher wages; and (4) he was qualified to receive higher wages. *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991).  Oliver has made out a prima facie case of pay discrimination by showing that the two employees received higher pay than he did for the same work.

The burden then shifts to Lhoist, to produce evidence of a legitimate, nondiscriminatory reason for its actions.  Lhoist alleges that company policy was to pay at an HEO rate only if employees "operated much larger equipment . . . performed HEO duties . . . or operated the GPS survey equipment." (Doc. 22, Ex. G at 3.) Oliver did not qualify for any of these categories of higher payment. He was operating a 980 loader, which was not heavy equipment unless it was used for heavy equipment duties. (*Id.*) He performed his usual duties with this loader (the 980) when the smaller equipment that he routinely used (the 320) was not available. (Campbell Dep. 63.)

Lhoist admits that on February 18, 2014, Pickens and Powell were mistakenly upgraded to HEO pay while operating the 980 loader. (Barry Dep. 19-20.) However, Lhoist also proffers that these payments were a mistake and that it was rectified. (Barry Dep. 19-20, Squires Dep. 135.) The supervisors were told not to pay Pickens and Powell HEO pay unless they were doing HEO work, and Lhoist paid Oliver eight hours of HEO pay to settle his union grievance about this issue. (Squires Dep. 110 & 135, Barry Dep. 19, Doc. 22 at DX 6.)

Because Lhoist offers evidence of a legitimate, nondiscriminatory reason for its actions, the burden shifts to Oliver to show that Lhoist's proffered reasons are pretextual. Here, Oliver makes a blanket claim that this inappropriate pay upgrade happened multiple times, but does not provide any dates or other evidence of specific instances when it otherwise occurred. As Lhoist clearly paid Oliver for the one day of HEO pay that he showed existed, there is no evidence of pretext. (Doc. 22, Ex. G-10 at Bates 398.) Summary judgment as to this claim is due to be granted.

### 4.  LFCA & Termination

Because the analysis of discrimination claims under Title VII and §1981 is the same, summary judgment as to these claims is also due to be granted for the same reasons discussed earlier.

ii. Retaliation

Retaliation claims under § 1981 are analyzed under the same framework as Title VII retaliation claims. *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 & n.14 (11th Cir. 2011). Therefore, in order to establish a prima facie case of retaliation under § 1981, a plaintiff must establish that (1) he engaged in a statutorily protected activity, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse employment action. *Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1258 (11th Cir. 2012). A causal connection can be shown by "close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). However, "mere temporal proximity, without more, must be 'very close.'" Id. (quoting *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798–99 (11th Cir. 2000)).

1. LCA

Oliver claims that he was put on a LCA and suspended for five days in retaliation for filing a complaint with the MSHA. Oliver's MSHA complaint does not allege *racial* discrimination. (Doc. 22, DX 27.) Instead, it alleges that he was discriminated against because "I was the Miner's Rep., Union

Rep. and I made sure that he [did] things [fairly] and safely." (Doc. 22, DX 27 at 6.) However, the Court reads Oliver's brief to allege that he would not have been fired for filing this complaint if he was not African-American. Therefore, Oliver shows that he engaged in protected activity.

Oliver also has demonstrated that he suffered an adverse employment action, as it is undisputed that he was suspended for five days as part of his LCA. Regardless, he does not provide evidence that he was placed on the agreement because of his protected activity. In order to show causation, a plaintiff can provide evidence of retaliatory motive or of temporal proximity between the protected activity and adverse action. Here, Oliver filed his MSHA complaint on May 13, 2013. He was placed on the LCA on September 3, 2013, almost five months after his complaint was filed. This is not close enough in time to establish a causal connection by temporal proximity. *Thomas*, 506 F.3d at 1364. Oliver also does not provide any evidence of retaliatory motive. Oliver has failed to make out a prima facie case of discrimination as to this claim and so summary judgment is due to be granted.

### 2. Verbal Warning

Oliver alleges that he was issued a verbal warning in retaliation for filing an EEOC charge on September 9, 2013. (Doc. 22, DX 7.) He received

a verbal warning on February 11, 2014, over five months later. This is not close enough to establish the causation element of his prima facie case, and Oliver offers nothing else to demonstrate causation as to this claim. Summary judgment as to this claim is due to be granted.

### 3. HEO Pay

Oliver claims that he was not paid HEO pay for operating the 980 loader in retaliation for his filing the EEOC charge on September 9, 2013. However, Powell and Pickens were upgraded to HEO pay in February 2014, over five months after the EEOC charge was filed. As with the LCA, the temporal proximity here is not close enough to make out a prima facie case and Oliver did not present any other evidence of retaliatory motive. As such, Oliver did not establish a prima facie case of retaliation.

Even if Oliver had established a prima facie case of retaliation, the analysis under the *McDonnell Douglas* burden-shifting standard would be the same as under the discrimination claim for HEO pay. Thus, summary judgment as to this claim is due to be granted.

### 4. LFCA & Termination

Analysis for retaliation under § 1981 as to these claims is the same as earlier discussed as to the corresponding Title VII claims. Summary judgment as to these claims is due to be granted.

IV.   CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is due to be GRANTED.   An order consistent with this opinion will be entered separately.

**DONE** and **ORDERED** this 22nd day of September 2016.

_____
L. Scott Coogler
United States District Judge

186291